UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────
BRYANT CUBILETE,

              Plaintiff,

    -against-

THE UNITED STATES OF AMERICA, and GMD SHIPYARD CORP.,

              Defendants.
─────────────────────────────────

**MEMORANDUM & ORDER**

**18-cv-6431 (NGG) (SJB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Bryant Cubilete brings this personal injury action against Defendants GMD Shipyard Corp. ("GMD") and the United States based on injuries he suffered when he fell at a work site at the Brooklyn Navy Yard. (*See* Second Am. Compl. ("SAC") (Dkt. 14).) Currently before the court is the United States's motion to dismiss GMD's crossclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c). (*See* Mot. to Dismiss ("Mot.") (Dkt. 24).) For the following reasons, the United States's motion is GRANTED.

### I. BACKGROUND

Cubilete alleges that he was injured when he fell at a work site at the Brooklyn Navy Yard. (SAC ¶ 12.) At the time, Cubilete was engaged by his employer, Jen-Mar Electric Service Corp., to perform construction work on a vessel owned by the United States Army. (*Id.* ¶¶ 4, 8, 11.) Though the vessel—U.S. Army BD-6801—was owned by the Army, the United States had awarded a contract to Defendant GMD to perform maintenance work on it in February 2016. (GMD Contract Cover (Dkt. 24-1).) On July 19, 2017, Cubilete was engaged in repair work aboard the vessel. (SAC ¶ 11.) While he was working, Cubilete stepped on an unsecured piece of plywood which gave way and caused him to fall through an opening in the floor. (*Id.* ¶ 14). Cubilete plummeted

1

approximately twelve to fifteen feet and suffered various injuries as a result. (*Id*. ¶ 14, 16.) He claims his injuries were caused by negligence on the part of the United States and GMD and that both Defendants violated §§ 200, 240(1), and 241(6) of the New York Labor Law. (*See id*. ¶¶ 15, 22.)

Cubilete filed his complaint in this court on November 12, 2018. (Compl. (Dkt. 1).) He subsequently amended his complaint twice: first on December 15, 2018 (*see* First Am. Compl. (Dkt. 4)), and again on July 29, 2019. (SAC.) The United States answered the SAC on August 9, 2019. (United States Answer (Dkt. 15).) On August 19, GMD also answered the SAC and asserted crossclaims against the United States. (GMD Answer & Crossclaims (Dkt. 17).) GMD's crossclaims assert that, should GMD be found liable to Cubilete, the United States is liable to indemnify GMD. (*Id*.) Currently pending before the court is the United States's motion to dismiss GMD's crossclaims for lack of subject matter jurisdiction under Rule 12(b)(1), or, in the alternative, for judgment on the pleadings under Rule 12(c). (*See* Mot.; Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt 24-1); Mem. in Opp. to Mot. to Dismiss ("Opp.") (Dkt. 25); Reply (Dkt. 26).)

## II.  LEGAL STANDARD

### A.  Rule 12(b)(1)

Under Rule 12(b)(1), a district court must dismiss a case when it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)[1]; *see also Banks-Gervais v. Bd. of Elections*, No. 18-cv-5252 (RJD), 2018 WL 10070504, at *2 (E.D.N.Y. Sept. 28, 2018) ("Federal courts are of limited jurisdiction and may not hear a case absent subject-matter jurisdiction."). In reviewing a motion to dismiss under

---

[1] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

Rule 12(b)(1), the court must accept all material factual allegations in the complaint as true, *see Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998), but should not draw "argumentative inferences favorable to the party asserting jurisdiction." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)). The court may refer to evidence outside the pleadings. *See Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.,* 791 F. 2d 1006, 1011 (2d Cir. 1986) (stating that "evidentiary matter may be presented by affidavit or otherwise" under a Rule 12(b)(1) motion)). The non-moving party bears the burden of showing, by a preponderance of the evidence, that the court has subject matter jurisdiction over its claims. *See id.*

### B. Rule 12(c)

In deciding a Rule 12(c) motion for judgment on the pleadings, the court employs "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the [nonmovant's pleading] as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). Thus, to withstand a motion to dismiss or for judgment on the pleadings, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As with a Rule 12(b)(6) motion, the court assumes facts alleged in the complaint are true and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

### III. DISCUSSION

#### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

The United States first argues that this court does not have jurisdiction over GMD's crossclaims because those crossclaims are governed by the Contract Dispute Act ("CDA").

1. The Contract Dispute Act

"The CDA creates a remedial scheme whereby persons wishing to bring a contract-based claim against the federal government must first submit their claim in writing to a contracting officer." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 401 (2d Cir. 2017) (citing 41 U.S.C. §§ 7103(a)(1-2)). The CDA "applies to any express or implied contract . . . made by an executive agency for (1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair, or maintenance of real property; or (4) the disposal of personal property." 41 U.S.C. § 7102(a). Once a claim has been submitted to the contracting officer, the officer must "issue a decision in writing and shall mail or otherwise furnish a copy of the decision to the contractor." *Id.* § 7103(d).

A "contracting officer's decision on a claim is conclusive and is not subject to review by any forum, tribunal, or Government agency, unless an appeal or action is timely commenced as authorized by this chapter." *Id.* § 7103(g). "The CDA provides that, within 90 days of receipt of a contracting officer's decision, an aggrieved contractor may either appeal a decision by a contracting officer to the relevant board of contract appeals, or bring an action directly on the claim in the United States Court of Federal Claims." *Cohen*, 873 F.3d at 401.

"In order to determine whether the CDA applies, federal courts generally look to whether the issue at issue is one of contract."

4

*United States v. J & E Salvage Co.*, 55 F.3d 985, 987 (4th Cir. 1995); *see also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1136 (6th Cir. 1996) ("[F]or the CDA to apply, it must first be determined that the claims asserted are 'essentially contractual' in nature."). The CDA "encompasses more than causes of action that arise under contract law; rather, the language encompasses any disputes that relate to a contract." *Rich Marine Sales, Inc. v. United States*, 384 F. Supp. 3d 373, 378 (W.D.N.Y. 2019). The Second Circuit has "held that the question of whether an action is 'at its essence' a contract action . . . depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought." *Cohen*, 873 F.3d at 403. Courts must therefore make "rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 969-70 (D.C. Cir. 1982).

At the same time, however, "the mere fact that a court has to decide some contract issues in the course of resolving a tort action does not automatically convert the claim into one sounding in contract if there is some independent basis for the tort claim." *J & E Salvage Co.*, 55 F.3d at 989. "The relevant question is whether, despite the presence of an underlying contract between the parties, the rights asserted that form the basis of the claims are founded on contract or on another ground." *Contango Operators, Inc. v. United States*, No. H-11-cv-0532, 2011 WL 13130834, at *3 (S.D. Tex. Oct. 26, 2011) (quoting *B&B Trucking, Inc. v. U.S. Postal Serv.*, 406 F.3d 766, 774 (6th Cir. 2005)).

   2. GMD's Crossclaims Do Not Fall Within the Scope of the CDA

Here, GMD's crossclaims are not governed by the CDA because the "rights asserted that form the basis of [GMD's] claims" are not founded on the contract between GMD and the United States.

5

To determine whether GMD's crossclaims are in essense contract claims, the court must analyze both "the source of the rights upon which the plaintiff bases its claims, and . . . the type of relief sought." *Up State Federal Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) (quoting *Megapulse*, 672 F.2d at 968). Here, GMD's crossclaims allege that "[i]f the Plaintiff sustained any of the injuries as alleged, other than through its own negligence, and [GMD] is held liable for any portion of those damages, . . . those damages were caused by the negligent acts and/or omissions of the [United States]," and that if "[P]laintiff recovers against [GMD] . . . then the [United States] shall be liable to indemnify [GMD] for all of such judgment." (GMD Answer & Counterclaims at ECF 7.) Both the source of the rights asserted by GMD and the type of relief sought by GMD sound in common law and do not derive from or invoke the contract between the United States and GMD. *Cf. J.& E Salvage Co.*, 55 F.3d at 985 (4th Cir. 1995) (finding exclusive Court of Claims jurisdiction where plaintiff's claim arose from an alleged failure to comply with a bill of sale and where the principal remedy sought—rescission of sale—sounded wholly in contract); *North Star Alaska v. United States*, 14 F.3d 36 (9th Cir. 1994) (finding exclusive Court of Claims jurisdiction where the action involved a determination of the original intent of the contracting parties).

The United States relies heavily on *Rich Marine Sales* to argue to the contrary, but that case is distinguishable. There, the United States entered into a contract with third-party Luedtke Engineering Company ("Luedtke") to conduct a dredging project of a channel along the Niagra River in Buffalo, New York. *Rich Marine Sales, Inc.*, 384 F. Supp. 3d at 375-76. Plaintiff alleged it was injured as a result of Luedtke's negligent drilling; in particular, plaintiff asserted that Luetdke performed dredging outside of the channel even though the contract between the United States and Luedtke required dredging to be conducted soley within the confines of the channel. *Id.* at 376. Luedtke asserted crossclaims

6

against the United States for indemnifcation and contribution. *Id.* In finding that Luedtke's crossclaims were governed by the CDA, the court reasoned that "Luedtke's cross-claims only become relevant if [p]laintiff successfully establishes Luedtke's liability, and [p]laintiff's theory of liability against Luedtke is based on its alleged dredging activity in contravention of its contract with the United States." *Id.* at 379. Because any liability would spring from a breach of the contract between the United States and Luedtke, the court held that "any indemnification or contribution claim by Luedtke against the United States is necessarily rooted in contract." *Id.*

Here, by contrast, Cubilete's theory of liability against GMD is not based on GMD's "contravention of its contract with the United States," but rather on common-law negligence, (*see* SAC ¶¶ 15, 16, 22, 23) and any liability owed to GMD by the United States would not arise from the United States breaching the underling contract between the parties. *Cf. Contango Operators Inc.*, 2011 WL 13130834, at *4 (finding that claim was "essentially contractual" where liability between crossclaimaints turned on interpretation of underlying contract between the parties). The United States's argument that GMD's claims are "rooted in the contract" because it was GMD's "negligent performance under the contract" that led to Cubilete's injury seeks to elide this distinction, but fails to point to any facts to support that claim or reconcile this case with *Rich Marine Sales* and *Contango Operators*. (Opp. at 8.) Furthermore, the United States's neat syllogism as to why the CDA must apply—Cubilete was on the ship doing repair work only because of the contract between the United States and GMD, so any duty owed to GMD by the United States must be governed by the terms of the contract—ignores the motivating inquiry behind the CDA's applicability which is not mere presence of a contract between the parties, but whether or not the claims asserted sound in contract. Here, they do not.

The Second Circuit's decision in *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398 (2d Cir. 2015) is instructive. In that case, the United States Marshals Service ("USMS") contracted with Akal Security, Inc. ("Akal") to provide security services for United States courts and judicial officers. *Id.* at 402. Plaintiff was an employee of Akal and, pursuant to a contract between the USMS and Akal, worked as a security officer in a federal building in Rochester, New York. *Id.* Plaintiff was terminated from his position by USMS and subsequently brought suit, asserting a claim under the Administrative Procedures Act ("APA") that USMS violated his rights under the Due Process Clause and acted arbitrarily and capriciously by terminating his employment. *Id.* In evaluating plaintiff's APA claim under the two-prong test announced in *Up State*, the district court held that "the source of the rights at issue . . . is related to and dervies from the USMS-Akal contract." *Atterbury v. U.S. Marshall Serv.*, No. 12-cv-502, 2014 WL 3392725, at *12 (W.D.N.Y. July 10, 2014). The Second Circuit reversed, finding that "[t]he right asserted by [plaintiff] is not USMS's right to dismiss [plaintiff], but instead [plaintiff's] right to continued employment as" an officer. *Atterbury*, 805 F.3d at 402. The court emphasized that plaintiff did "not ground his claim in any provision of Akal's contract with USMS," but rather in an "independent source of rights"—the Due Process Clause of the Fifth Amendment. *Id*.

Here, too, GMD has not "grounded" its claim in a provision of its contract with the United States, but rather asserts an independent source of rights for its claim; namely, common law indemnification. Furthermore, *Atterbury*'s holding directly rebuts the United States's repeated assertion that GMD's claim must arise from the contract between the parties because, absent the contract, Cubilete would not have been working on the ship and would not have been injured. So too in *Atterbury*: had USMS not entered into a contract with Akal, the plaintiff would not have been working in the Rochester federal building and would not

8

have been terminated. Nonetheless, *Atterbury* makes clear that this fact alone—that a contract is a but-for cause of a harm—is not sufficient on its own to make the claim at issue "essentially contractual."

Accordingly, the court finds that it has jurisdiction over GMD's crossclaims as they are not goverened by the CDA.

### B. Motion to Dismiss Pursuant to Rule 12(c)

The United States argues that it is entitled to judgment on the pleadings due to GMD's failure to state a claim. (*See* Mem. at 8; Reply at 5.) While it is true that the pleading standards may be "lessened somewhat for third-party claims, which may be read in conjunction with the original pleadings . . . third-parties seeking indemnification or contribution must still set forth enough facts to state a claim to relief that is plausible on its face." *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp. 3d 348, 361 (E.D.N.Y. 2016); *see also Energy Brands, Inc. v. Jorgensen*, No. 09-cv-591A, 2011 WL 282354, at *7 (W.D.N.Y. Jan. 25, 2011) (dismissing crossclaims that contained only "conclusory allegations" that if movants were "found liable to plaintiff, [co-defendants] [would be] liable to [movants] under a theory of contribution or indemnification"); *Gabriel Captial, L.P. v. Natweset Fin., Inc.*, 137 F. Supp. 2d 251, 269-70 (S.D.N.Y. 2000) (dismissing crossclaim that defendant was entitled to indemnification and/or contribution from co-defendants without a cause of action or supporting facts).

Applying these standards, GMD's crossclaims fall short of what Rule 8 requires, as they do not "provide more than boilerplate language" to give adequate notice to the United States of the claims asserted against them. GMD asserts the following crossclaims:

> If the Plaintiff sustained any of the alleged damages other than through the negligence of the Plaintiff, and if answering

9

> Defendant is held liable for any portion of those damages, which it denies, those damages were caused in whole or in part by the negligent acts and/or omission of the Defendant above named and not by any negligence on the part of the answering Defendant.
>
> In the event the Plaintiff should recover against answering Defendant for any of the damages alleged in the complaint, then the Defendant above named, shall be liable to indemnify the answer Defendant on the basis of apportionment of responsibility.

(GMD Answer & Counterclaims at ECF 7.) While GMD's "crossclaim[s] d[o] reference the [c]omplaint, [they] d[o] not contain a single independent fact indicating why [the United States] is obligated to indemnify [GMD] in the event [GMD] is ultimately found liable to [Cubilete]." *Sands Harbor*, 156 F. Supp. 3d at 361. GMD admits as much, explaining that its crossclaims are "simply reiterating [Cubilete]'s allegation." (Opp. at 7.) That is insufficient, however, to meet the pleading requirements of Rule 8. Accordingly, the United States's motion to dismiss is granted.

### IV.  CONCLUSION

For the reasons stated above, the United States's (Dkt. 24) motion to dismiss is granted.

SO ORDERED.

Dated:   Brooklyn, New York
         June 29, 2020

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge